IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LAMAR ALFORD, | HONORABLE JEROME B. SIMANDLE |
| Petitioner, | |
| v. | Civil Action<br>No. 15-5640 (JBS) |
| WARDEN NEW JERSEY STATE<br>PRISON, et al., | |
| | **OPINION** |
| Respondents. | |

APPEARANCES:

Lamar Alford, Petitioner pro se
540521/204833c
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625

Mary Eva Colalillo, Camden County Prosecutor
Linda A. Shashoua, Assistant Prosecutor
Camden County Prosecutor's Office
Appeals Unit
25 North Fifth Street
Camden, NJ 08102

**SIMANDLE, District Judge:**

## I.    INTRODUCTION

Lamar Alford has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. [Petition, Docket Entry 1]. Respondent Warden, New Jersey State Prison opposes the petition. [Answer, Docket Entry 10]. For the reasons stated herein, the petition shall be denied and no certificate of appealability shall issue.

## II.  BACKGROUND

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference, 28 U.S.C. § 2254(e)(1), reproduces the recitation of the facts as set forth by the New Jersey Superior Court, Appellate Division ("Appellate Division") in its opinion denying Petitioner's direct appeal:

> On May 22, 2005, Salvador A. Martinez, known as Twin by some and Alex by others, was shot and killed. The victim was in an alley on Merriel Avenue in Camden at about 9:30 p.m. when two men dressed in dark clothing, one tall and one short, entered the alley and pushed the victim to the ground. Lillian Davis heard one of the men say, "don't move, just stay there," and the victim ceased his attempts to stand. She observed the men stand over the victim and rifle through his pockets. Then she saw the taller man run from the alley, and "[the shorter one] was getting ready to run, but he turned back around like ... pulled it out and shot one time." Then the shorter assailant ran from the scene. Davis could not identify either man because, as she stated numerous times at trial, "I didn't see no faces."
>
> Carol Lofland, standing near the alley with Davis and a man known as Beans, saw the shorter man rifle through the victim's pockets and saw both men start to run. Lofland then saw the shorter man stop, turn, return to the victim, and fire one shot. Thia Kim, sitting in the park across from the alley, saw both men run from the alley, cross the street, run through the park, and across nearby railroad tracks. Kim testified that he saw the faces of both men and recognized both men. Kim recognized Alford because "I seen [him] around." He testified he recognized [co-defendant Ziair] McDaniels as a person who hung around his middle school. Kim also stated he had seen McDaniels in the neighborhood but had not seen him with Alford. The victim was pronounced dead at the hospital.

*State v. Alford* ("*Alford I*"), No. A-0804-07, 2010 WL 3516787, *1 (N.J. Super. Ct. App. Div. Sept. 8, 2010) (omission in original) (final alteration added). Petitioner and McDaniels were charged with first-degree murder, N.J. STAT. ANN. § 2C:11-3(a)(1) or (2) (Count One); first-degree felony murder, N.J. STAT. ANN. § 2C:11-3(a)(3) (Count Two); first-degree robbery, N.J. STAT. ANN. § 2C:15-1 (Count Three); first-degree conspiracy/murder/robbery, N.J. STAT. ANN. §§ 2C:5-2, 11-3(a)(1); 15-1 (Count Four); second-degree possession of a handgun for an unlawful purpose, N.J. STAT. ANN. § 2C:39-4(a) (Count Five); third-degree unlawful possession of a handgun, N.J. STAT. ANN. § 2C:39-5(b) (Count Six); and second-degree certain persons not to have weapons, N.J. STAT. ANN. § 2C:39-7 (Count Seven). [Indictment, Ra1].[1]

Neither Petitioner nor McDaniels testified or presented any witnesses on their behalf. As for the state:

> Carol Lofland identified Alford, known on the street as Bling and by some as Blaze, as the taller of the men. She did not identify McDaniels as the shorter man. She, unlike Kim, gave inconsistent testimony about seeing McDaniels, known on the street as Sugar Hill, with Alford on a regular basis. Initially, she testified that she saw them together rarely. When confronted with her statement given about a month after the shooting in which she stated she saw them together often, she changed her testimony.
>
> Jacob Eller testified he knew the victim and Alford because he was a drug user and had purchased drugs from both men on numerous occasions. He also recounted an

---

[1] "Ra" refers to the exhibits to Respondent's Answer, Docket Entry 10.

encounter with defendants earlier on May 22, when he
went to a street corner in Camden to buy drugs.

> According to Eller, as he awaited his turn to purchase
> drugs, someone arrived in Alford's car. Eller heard the
> driver say to Alford, "you're not getting your money he
> owes you," and he heard Alford respond, "go get my gun,
> I'll get my f-----g money." Eller said someone obtained
> a gun, and gave it to Alford, who entered the passenger
> seat of his car and drove away. Eller also testified
> that Alford had an "associate," who he identified as
> McDaniels. He stated he had seen them together "a hundred
> times."

*Alford I*, 2010 WL 3516787 at *2 (omission in original).

Defendants were convicted on all counts.

After merging counts and sentencing Petitioner to a life
term on the felony murder charge with a concurrent twenty-year
term on Count Four and a consecutive ten-year term on Count
Seven, Petitioner "is serving life plus ten years in prison
subject to a parole ineligibility term of 68.75 years." *Id.* at
*1. [*See also* Judgment of Conviction, Ra2; Amended Judgment of
Conviction, Ra2b]. Petitioner filed a notice of appeal. The
Appellate Division affirmed Petitioner's convictions but
remanded for reconsideration of the imposed consecutive term.
*Alford I*, 2010 WL 3516787 at *11. On January 21, 2011, the trial
court resentenced Petitioner to the same sentence. [Ra3].

Petitioner filed a request for certification by the New
Jersey Supreme Court on September 9, 2010. [Ra10]. The court
denied review on February 3, 2011. *State v. Alford*, 13 A.3d 362
(N.J. 2011).

Petitioner filed a pro se post-conviction relief ("PCR")
petition on March 22, 2011. [PCR Petition, Ra13]. His counsel
filed a supplemental brief on September 20, 2011. [Supplemental
Brief, Ra14]. The PCR court heard oral argument on September 23,
2011 and denied the petition without an evidentiary hearing.
[*See generally* 12T].[2] The Appellate Division affirmed the denial
for the reasons stated by the PCR court, *State v. Alford*
("*Alford II*"), No. A-2532-11, 2014 WL 2533794 (N.J. Super. Ct.
App. Div. June 6, 2014), and the New Jersey Supreme Court denied
certification on February 17, 2015. *State v. Alford*, 108 A.3d
635 (N.J. 2015).

Petitioner subsequently filed this § 2254 petition. [Docket
Entry 1]. The Court reviewed the petition pursuant to the Rules
Governing § 2254 Proceedings and ordered Respondent to answer
the petition. [Order to Answer, Docket Entry 2]. Respondent

---

[2]  1T – Transcript of Motion Hearing, dated July 14, 2006.
   2T – Transcript of Reconstruction of July 14, 2006 Record,
dated June 24, 2008.
   3T – Transcript of *Miranda* Hearing, dated February 14, 2007.
   4T – Transcript of trial, dated February 21, 2007.
   5T – Transcript of trial, dated February 22, 2007 [refiled at
Docket Entry 11].
   6T – Transcript of trial, dated February 27, 2007.
   7T – Transcript of trial, dated February 28, 2007.
   8T – Transcript of trial, dated March 1, 2007.
   9T – Transcript of trial, dated March 7, 2007.
   10T – Transcript of trial, dated March 8, 2007.
   11T – Transcript of sentencing, dated April 27, 2007.
   12T – Transcript of PCR hearing, dated September 23, 2011.

filed its answer, [Answer, Docket Entry 10], and Petitioner submitted a traverse, [Traverse, Docket Entry 13].

This matter is now ripe for review without oral argument. Fed. R. Civ. P. 78(b).

**III. STANDARD OF REVIEW**

Title 28 U.S.C. § 2254 permits a federal court to entertain a petition for writ of habeas corpus on behalf of a person in state custody, pursuant to the judgment of a state court, "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

With respect to any claim adjudicated on the merits by a state court, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and

nevertheless arrives at a result different from [the Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). "[A] state-court decision is an unreasonable application of clearly established [Supreme Court] precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." *White v. Woodall*, 134 S. Ct. 1697, 1706, *reh'g denied*, 134 S. Ct. 2835 (2014). The Court must presume that the state court's factual findings are correct unless Petitioner has rebutted the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## IV. ANALYSIS

Petitioner raises the following points for this Court's review:

I.   The improper admission of testimony regarding Defendant's alleged drug dealing with his co-defendant's [sic] violated N.J.R.E. 404(b) and deprived him of his right to due process and a fair trial.

II.  The trial court permitted improper and highly prejudicial hearsay testimony from Investigator Greer, which bolstered the testimony of the State's three identification witnesses, and necessitates reversal.

III. Trial court erred in charging the jury that Lofland had "identified the [co-defendant] by build and stature as the person with [defendant] at the scene," which deprived Defendant of his right to due process and a fair trial. (Alterations in original)

IV. The jury's exposure to Juror 7's comment that Defendant's two teardrop tattoos meant he killed two people deprived defendant of his right to due process of law and a fair trial by an impartial jury.

V. The trial was so infected with error that even if the individual errors, as set forth above do not constitute reversible error, the errors in the aggregate denied defendant a fair trial.

VI. By improperly imposing consecutive terms, the court imposed an excessive sentence, necessitating reduction.

VII. Petitioner was denied his constitutional right to effective assistance of counsel by the failure of trial counsel to present third party guilt.

VIII. Petitioner was denied his constitutional right to effective assistance of counsel by the failure of trial counsel to effectively confront state witnesses Thia Kim and Jacob Eller.

IX. Petitioner was denied his constitutional right to effective assistance of counsel due to the cumulative errors of counsel.

X. The order denying post-conviction relief should be reversed and the matter remanded for a full evidentiary hearing because Defendant made a prima facie showing that his Fourteenth Amendment Due Process right to be protected against a deception that there was no pending plea bargain between the state and Thia Kim, and his Fourteenth Amendment Due Process right to Effective assistance of counsel were violated.

XI. The order denying post-conviction relief should be reversed and the matter remanded for a full evidentiary hearing because trial counsel's failure to cross-examine Jacob Eller on his expectation of a favorable treatment from the State satisfied the prima facie standard for ineffective assistance of counsel under the *Strickland/Fritz* test.

XII. Post-conviction relief should be granted because of prosecutorial and judicial misconduct.

## A. Admission of Improper Testimony

In Grounds I and II, Petitioner alleges the trial court erred by admitting evidence about Petitioner's alleged drug dealing and by admitting hearsay evidence from Investigator Greer, respectively.

### 1. Other Crimes Evidence

Petitioner argues that the admission of Eller's testimony regarding Petitioner's history as a drug dealer violated New Jersey Rule of Evidence 404(b). [*See* Petition at 6; Traverse at 12-20]. This ground lacks merit. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Even if the admission the testimony violated New Jersey's evidence rules, "'federal habeas corpus relief does not lie for errors of state law.'" *Id.* at 67 (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1984)). Petitioner presented both state and federal arguments to the Appellate Division, but the Appellate Division rejected Petitioner's arguments solely on the basis of state law and did not address his federal claim. "When a state court rejects a federal claim

without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits[.]" *Johnson v. Williams*, 568 U.S. 289, 301 (2013). The Court therefore applies the appropriate AEDPA deference.

"Admission of 'other crimes' evidence provides a ground for federal habeas relief only if 'the evidence's probative value is so conspicuously outweighed by its inflammatory content, so as to violate a defendant's constitutional right to a fair trial.'" *Bronshtein v. Horn*, 404 F.3d 700, 730 (3d Cir. 2005) (quoting *Lesko v. Owens*, 881 F.2d 44, 52 (3d Cir. 1989)). Eller testified he knew Petitioner as "Johnny Blaze" and had been buying drugs from him for a long time. [5T206:1-7]. Eller stated that just before the murder, he went to purchase crack cocaine from Petitioner when a car belonging to Petitioner pulled up. [5T215:18 to 216:2]. The driver told Petitioner that "you're not getting the money he owes you." [5T219:11]. Petitioner then became angry and stated: "go get my gun, I'll get my fucking money." [5T220:15-16].

At the conclusion of Eller's testimony, the trial court instructed the jury on the limited purposes for which it could use the evidence regarding Petitioner's drug dealing history:

> [Y]ou've also heard evidence that the defendants in this matter, Lamar Alford and Ziair McDaniels may have been involved in drug-dealing.

Normally, this evidence is not permitted under our Rules of Evidence. Our rules specifically exclude evidence that a defendant has committed other crimes, wrongs, or acts when it's offered only to show he has a disposition or tendency to do wrong and therefore must be guilty of the charged offenses.

. . . Before you can give any weight to this evidence, you must be satisfied that the defendant committed other crimes, wrongs, or acts. If you are not satisfied, you may not consider it for any purpose.

However, our rules do permit evidence of other crimes, wrongs, or acts when the evidence is used for certain specific, narrow purposes.

In this case, it was admitted solely to prove the knowledge and the identity of the defendants and a possible motive for the incident.

Whether this evidence does, in fact, demonstrate that specific purpose is for you to decide. You may decide the evidence does not demonstrate that knowledge of the defendants or the identity of the defendants and a possible motive and is not helpful to you at all.

In that case, you must disregard the evidence. On the other hand, you may decide that the evidence does demonstrate that specific purpose and you may use it for that specific purpose only.

However, you may not use the evidence to decide that the defendants have a tendency to commit crimes or that they're bad persons. That is, you may not decide that just because a defendant has committed other crimes, wrongs, or acts, he must be guilty of the present crime.

[5T290:9 to 291:21]. The trial court gave a similar instruction in the final charge, but at trial counsel's request limited the purpose for admission to identity. [8T191:8-9; 194:18-20; 9T114:20 to 116:11].

"Other crimes evidence is routinely admitted when it is relevant to show 'identity.'" *Bronshtein*, 404 F.3d at 731 (citing Fed. R. Evid. 404(b)). *See United States v. Wilson*, 31 F.3d 510, 515 (7th Cir. 1994) (permitting evidence of prior drug transactions in order to establish a "buyer-seller relationship" between informant and defendant, identification of defendant, and to show how informant met defendant). *See also United States v. O'Leary*, 739 F.2d 135, 136 (3d Cir. 1984) (agreeing the need "to show the background of the charges [and] the parties' familiarity with one another" were purposes under Rule 404(b) (quotation marks omitted)). In closing arguments, trial counsel argued that Eller did not know Petitioner at all because no other witness referred to Petitioner as Johnny Blaze. [9T20:17-25, 21:9-10 ("It's ridiculous. That's not his nickname. Nobody knows him as that.")]. Thus, the evidence regarding Eller's continuous, prior dealings with Petitioner was relevant to establish their familiarity with each other.

As noted by the Appellate Division, references to drugs permeated the trial. "In the context of a record in which every witness, other than the police, had criminal records and all but one of the eyewitnesses to a critical element of the event was an admitted drug user, evidence that Alford was a drug dealer and may have sold drugs at one time with the victim could hardly have been a surprise to the jury." *Alford I*, 2010 WL 3516787, at

*7. In light of all the other evidence presented over four days of testimony, the Court cannot say that the brief mentions of Eller's history with Petitioner were so inflammatory so as to deprive Petitioner of a fair trial.

Petitioner's traverse also appears to challenge the sufficiency of the jury instructions regarding Eller's testimony under the Fourteenth Amendment. [*See* Traverse at 17]. This is a separate, independent claim from his challenge to the admissibility of Eller's testimony and was not raised in his original petition. Regardless, Petitioner is not entitled to relief on this basis.

Petitioner argues the trial court gave contradictory instructions because the jury was instructed at the time of Eller's testimony that the testimony was being admitted for identity and motive purposes and only for identity at the final charge. [Traverse at 21]. At the final charge, the trial court limited the purpose for admission to identity at trial counsel's request. [8T191:8-9; 194:18-20; 9T114:20 to 116:11]. Petitioner's argument that the jurors would have been confused as to how they could properly use the evidence because the trial court misspoke at one point time is likewise meritless. The trial court stated:

> Before you can give any weight to this evidence you must
> be satisfied that the defendant committed the other

offense. If you are not satisfied, you may not consider
it for any purpose.

However, our rules do permit evidence of other crimes,
wrongs, or offenses when the evidence is used for [a]
specific certain narrow purpose. In this case, the
evidence was admitted solely to prove a knowledge of the
defendant's identity prior to the shooting by the
witness.

Whether this evidence does, in fact, demonstrate prior
knowledge of the defendant's identity is for you to
decide. *You may not decide that the evidence does not
demonstrate prior knowledge of the defendant's identity
and is not helpful to you at all*. In that case, you must
disregard the evidence. On the other hand, if you decide
that the evidence does demonstrate prior knowledge of
the defendant's identity you may use it for that specific
purpose.

However, you may not use the evidence to decide that a
defendant has a tendency to commit crimes or is a bad
person. That is, you may not decide that just because
the defendant may have committed another crime, wrong,
or act he must be guilty of the present crime.

I've admitted the evidence only to help you to decide
the specific question of whether the witness may have
had prior knowledge of the defendant's identity. You may
not consider it for any other purpose and may not find
the-the defendant guilty now, simply because the State
has offered evidence that he may have committed another
crime, wrong, or an act in the past.

[9T115:4 to 116:11 (emphasis added)]. "[I]t is not enough that

there is some slight *possibility* that the jury misapplied the

instruction, the pertinent question is whether the ailing

instruction by itself so infected the entire trial that the

resulting conviction violates due process." *Waddington v.

Sarausad*, 555 U.S. 179, 190 (2009) (internal citation and

quotation marks omitted) (emphasis in original). "In making this

determination, the jury instruction 'may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.'" *Id.* (quoting *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)).

In the context of the paragraph and jury instructions as a whole, the minor error in the instruction did not "so infect[] the entire trial that the resulting conviction violates due process." *Duncan v. Morton*, 256 F.3d 189, 203 (3d Cir. 2001) (internal citations and quotations omitted). The trial court's instruction did not relieve the State of its burden of proof, nor did it require the jury to find that the evidence did in fact demonstrate prior knowledge. "While the instruction was not as clear as it might have been, . . . there is not a 'reasonable likelihood' that the jury would have concluded that this instruction, read in the context of other instructions, authorized the use of propensity evidence pure and simple." *Estelle*, 502 U.S. at 74–75.

The decision of the Appellate Division was therefore not contrary to, nor an unreasonable application of, established federal law. The decision is also not unreasonable in light of the facts presented at trial. Petitioner is not entitled to habeas relief on this basis.

2. *Hearsay Evidence from Investigator Greer*

Petitioner also argues that the trial court erred by admitting Eller's, Lofland's, and Kim's prior consistent statements through Investigator Greer's reading of the transcripts of his interviews with them. The Appellate Division ruled the statements were properly admitted under an exception to the hearsay rule pursuant to N.J. R. Evid. 803(a)(2). *Alford I*, 2010 WL 3516787, at *9.[3]

New Jersey evidence rules provide in relevant part that a statement is not hearsay if it was "previously made by a person who is a witness at a trial or hearing, provided it would have been admissible if made by the declarant while testifying and the statement is consistent with the witness' testimony" and was "offered to rebut an express or implied charge against the witness of recent fabrication or improper influence or motive." N.J. R. Evid. 803(a)(2). *See also* Fed. R. Evid. 801(d)(1)(B) (permitting introduction of declarant-witness's prior consistent statement for certain purposes).

Eller, Lofland, and Kim all testified Petitioner was involved with the death of the victim. Trial counsel cross-examined each witness as to his or her motivation for testifying and "unquestionably suggested that each was only testifying and

---

[3] The court conceded the issue was "a close question." *Alford I*, 2010 WL 3516787, at *11.

identifying defendants as the persons who killed the victim in order to further their own personal interests in receiving relief from their own pending criminal charges." *Alford* I, 2010 WL 3516787, at *9. [*See, e.g.,* 5T238:17-21 ("And [the police] went to your house, arrested you and brought you to the prosecutor's office . . . And they did that because they wanted to you come here and testify, correct?"); 6T160:2-8 ("You're being prosecuted by the Camden County prosecutor's office for your pending charges, correct? . . . And that's the same office that has subpoenaed you and called you to testify here today, correct?")].  The Appellate Division concluded that Investigator Greer properly introduced the witnesses' statements incriminating Petitioner because those statements arose before the witnesses were incarcerated on Camden County charges. *Alford I*, 2010 WL 3516787, at *9. This made it less likely their statements were tainted by the desire to curry favor with the Camden County Prosecutor. It further concluded that any error in admitting the statements did not "interfere[] with the jury's ability to assess [the witnesses'] credibility." *Id.*

"[T]he Due Process Clause does not permit the federal courts to engage in a finely-tuned review of the wisdom of state evidentiary rules." *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983). "A federal habeas court . . . cannot decide whether the evidence in question was properly allowed under the state law of

evidence." *Keller v. Larkins*, 251 F.3d 408, 416 n.2 (3d Cir. 2001). Even if the state court erred in admitting the evidence, "in order to show that an evidentiary error of this type rose to the level of a due process violation," Petitioner must show that "it was of such magnitude as to undermine the fundamental fairness of the entire trial." *Keller v. Larkins*, 251 F.3d 408, 413 (3d Cir. 2001).

Having reviewed the trial record and the decision of the Appellate Division with the appropriate AEDPA deference, this Court concludes that the state courts' decisions were not contrary to, nor an unreasonable application of, established federal law. Trial counsel attacked the witnesses' credibility, and the State was permitted to attempt to rehabilitate its witnesses. The jury was given a limiting instruction, [8T84:16-25], and it is presumed to have followed the trial court's instructions. *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987); *Richardson v. Marsh*, 481 U.S. 200, 211 (1987); *United States v. Bornman*, 559 F.3d 150, 156 (3d Cir. 2009).

The omission of the limiting instruction from the final charge does not entitle Petitioner to habeas relief. "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on

direct appeal." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).
"It is the rare case in which an improper instruction will
justify reversal of a criminal conviction when no objection has
been made in the trial court." *Id.* Trial counsel did not object
at the time the final charge was delivered. "An omission, or an
incomplete instruction, is less likely to be prejudicial than a
misstatement of the law." *Id.* at 155. *See also Albrecht v. Horn*,
483 F.3d 103, 129, (3d Cir. 2007) (citing *Henderson*).

In the final charge, the trial court reminded the jury that
they were the "sole and exclusive judges of the evidence, of the
credibility of the witnesses and the weight to be attached to
the testimony of each witness." [9T106:15-18]. This is similar
to a portion of the instruction given at the end of Investigator
Greer's redirect testimony. The instruction did not misstate the
law. Given the other evidence at trial, the Court is not
convinced the omission of the limiting instruction made
Petitioner's trial so unfair such that habeas relief is
available to Petitioner.

**B. Error in Jury Instructions Regarding Lofland Identification**

Petitioner argues in Ground III that the trial court erred
in its jury charge by instructing the jury that Lofland had
"identified the [co-defendant] by build and stature as the
person with [defendant] at the scene[.]"

At trial, Lofland testified she saw two individuals on the night in question. One was short, one was tall, and both were wearing black hoodies. [7T80:12-13]. She was not able to identify them at first, [7T81:5], but later identified the taller man as "Bling." [7T8923-25]. She identified Petitioner as "Bling" in court. [7T92:22 to 93:1]. She was never able to identify McDaniels, but the trial court misstated in the final charge that Lofland "identified the defendant Ziair McDaniels by build and stature, as the person with Alford at the scene, as well as on previous occasions." [9T117:19-22]. The Appellate Division concluded that "[a]lthough the judge provided an inaccurate summary of a portion of the testimony, the mistake could have no effect on Alford. Indeed, the judge properly summarized Lofland's identification testimony regarding Alford." *Alford I*, 2010 WL 3516787, at *10.

Petitioner's cursory allegation that "the judge's mischaracterization of evidence that directly related to the critical issue – identity – was clearly capable of producing an unjust result" does not persuasively explain how the trial court's error in instructing the jury as to the eyewitness testimony against his *co-defendant* resulted in a violation of *Petitioner's* constitutional rights. Lofland was able to positively identify Petitioner, and he notably does not challenge her identification of him. Other witnesses placed

Petitioner at the scene as well, and the jury was instructed that it was to assess each defendant's guilt separately. [*See* 9T166:21 to 167:2]. In the context of the record and entire jury charge, Petitioner has not met his burden of proving that the trial court's inaccurate statement regarding McDaniels "so infected the entire trial that [Petitioner's] resulting conviction violates due process." *Duncan v. Morton*, 256 F.3d 189, 203 (3d Cir. 2001) (internal citations and quotations omitted). *See also Henderson*, 431 U.S. at 154 (noting instruction must be more than "undesirable, erroneous, or even universally condemned" in order to violate Due Process). The state court's decision is not contrary to, nor is it an unreasonable application of, federal law.

**C. Jury Bias**

Ground IV alleges Petitioner's right to an impartial jury was compromised because members of the jury may have heard from Juror Seven that Petitioner's two teardrop tattoos meant he killed two people. The Appellate Division considered this claim on the merits during Petitioner's direct appeal, so the Court applies the appropriate AEDPA deference.

The Appellate Division stated the relevant facts:

Following jury selection, a juror notified the trial judge that another juror had commented about a tattoo on Alford's face, questioned whether the defense attorneys were retained or court-appointed, wondered whether defendants were in jail or free on bail, and expressed

some concern about retribution if the panel returned a guilty verdict. Juror No. 7 admitted that she made comments and admitted that someone had told her that a teardrop tattoo signified the person had killed someone in the past. She admitted she was curious about defendants' bail status and whether their attorneys were court-appointed or retained. She stated several times she realized these matters were not relevant, and she would not let any of this information or her curiosity about these issues influence her decision. Nevertheless, the trial judge excused her from service.

The trial judge then interviewed each juror about Juror No. 7's comments. The judge asked each juror if they had any discussions with Juror No. 7 or any other juror or overheard any discussions between or among other jurors about the case, the attorneys, or either defendant the prior evening or that morning. All but Juror No. 8 responded "No." Juror No. 8 advised the court and counsel that she had heard Juror No. 7 state that she had read about the case. She assured the court and counsel that she would decide the case solely on the evidence. Juror No. 14 advised the court and counsel of Juror No. 7's statements, and she stated that she would decide the case solely on the evidence adduced at trial and would not allow Juror No. 7's statements and speculation to influence her consideration of the evidence. Having received these responses, the trial judge decided there was no impediment to proceeding with the trial. Neither the prosecutor nor either defense counsel objected.

*Alford I*, 2010 WL 3516787, at *10.

The Sixth Amendment guarantees the "right to ... trial[ ] by an impartial jury." U.S. Const. amend. VI. This right is applicable to a criminal defendant in state court through the Fourteenth Amendment. *See Ristaino v. Ross*, 424 U.S. 589, 595 n.6 (1976) (citing *Duncan v. Louisiana*, 391 U.S. 145 (1968)). Principles of due process also guarantee a defendant an impartial jury. *Id.* (citing *Irvin v. Dowd*, 366 U.S. 717, 722

22

(1961)). In *Smith v. Phillips*, 455 U.S. 209 (1982), the Supreme Court held that "due process does not require a new trial every time a juror has been placed in a potentially compromising situation." *Id.* at 217. Instead, "[d]ue process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Id.*

The trial court's finding that the remaining jurors were impartial is accorded a presumption of correctness that can be overcome only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). *See also Skilling v. United States*, 561 U.S. 358, 396 (2010) ("In reviewing claims [of juror bias], the deference due to district courts is at its pinnacle . . . ."); *Mu'Min v. Virginia*, 500 U.S. 415, 428 (1991) ("A trial court's findings of juror impartiality may 'be overturned only for manifest error.'" (quoting *Patton v. Yount*, 467 U.S. 1025, 1031 (1984))). Here, the trial court's findings are supported by the record. The juror who made the remark was excused and replaced by an alternate. [5T32:11-17]. The trial court questioned the other jurors, and none of them had heard the

discussion about the tattoos. [5T33:23 to 45:1].[4] The only juror who heard the remark, Juror 14, affirmed that she could base her decision on the evidence produced in court. [5T7:1-3, 10:23 to 11:1]. Petitioner has not rebutted the presumption that the trial court was correct in its findings by clear and convincing evidence. He also has not shown that the Appellate Division acted contrary to or unreasonably applied clearly established federal law. Habeas relief is denied on this ground.

**D. Cumulative Error at Trial**

Petitioner alleges cumulative error in Ground V of his petition. "[A] habeas petitioner is not entitled to relief based on cumulative errors unless he can establish 'actual prejudice.'" *Albrecht v. Horn*, 485 F.3d 103, 139, 2007 WL 1149263 (3d Cir. 2007) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). *See also id.* (holding relevant test to be whether error "had substantial and injurious effect or influence in determining the jury's verdict").

The Appellate Division acknowledged "[t]his was not a perfect trial," *Alford I*, 2010 WL 3516787, at *11, but the Constitution does not require perfect trials, only fair ones. *Glenn v. Wynder*, 743 F.3d 402, 407 (3d Cir. 2014) (citing *United States v. Hasting*, 461 U.S. 499, 508 (1983)). The Appellate

---

[4] As noted by the Appellate Division, Juror 8 did hear Juror 7 mention that she had read about the case. [5T39:4-21].

Division noted that "the record in its entirety presents compelling evidence that Alford was one of the two men who accosted the victim in an alley, rifled his pockets, and was present when the smaller man shot him once in the heart." *Alford I*, 2010 WL 3516787, at *11.[5] The Court agrees, and, giving the state court's determination the appropriate deference, denies habeas relief.

## E. Excessive Sentence

Ground VI alleges the trial court imposed an unconstitutional, excessive sentence when it made Petitioner's sentence consecutive instead of concurrent. The Appellate Division considered this claim on Petitioner's direct appeal. [Answer at 72 n.5].

A federal court's ability to review state sentences is limited to challenges based upon "proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies." *See Grecco v. O'Lone*, 661 F. Supp. 408, 415 (D.N.J. 1987) (citation omitted). Thus, a challenge to a state court's discretion at sentencing is not

---

[5] Petitioner states throughout the record that the issues were "close" on appeal. [*See, e.g.,* Docket Entry 13 at 68]. The only issue the Appellate Division described as "close" was whether Investigator Greer should have read the prior consistent statements at trial. *Alford I*, 2010 WL 3516787, at *11. It described the evidence against Petitioner as a whole as "compelling." *Id.*

reviewable in a federal habeas proceeding unless it violates a separate federal constitutional limitation. *Butrim v. D'Ilio*, No. 14-4628, 2018 WL 1522706, at *16 (D.N.J. Mar. 28, 2018) (citing *Pringle v. Court of Common Pleas*, 744 F.2d 297, 300 (3d Cir. 1984)). *See also* 28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 67; *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

"The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" *Ewing v. California*, 538 U.S. 11, 20 (2003) (citations omitted). The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are "'grossly disproportionate' to the crime." *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in judgment) (citation omitted) (quoted with approval in *Ewing*, 538 U.S. at 23). "A court must consider three proportionality factors when evaluating Eighth Amendment challenges: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for commission of the same crime in other jurisdictions." *United States v. Burnett*, 773 F.3d 122, 136 (3d Cir. 2014) (citing *Solem v. Helm*, 463 U.S. 277, 290-92 (1983)). "In conducting this analysis, a

court grants substantial deference to legislative decisions regarding punishments for crimes." *Id.*

The Appellate Division relied on a state case, *State v. Yarbough*, 498 A.2d 1239 (N.J. 1985), *cert. denied*, 475 U.S. 1014 (1986), that set out factors for courts to consider in determining whether sentences should be consecutive or concurrent. This Court cannot review whether the trial court applied the *Yarbough* factors correctly, *see Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991), but for Eighth Amendment purposes the Court notes that the *Yarbough* factors are an amalgamation of other jurisdictions' criteria for imposing consecutive or concurrent sentences. *Yarbough*, 498 A.2d at 1245–48.

Here, "[t]he judge found that the weapons charge was a separate offense, and advances the public purpose of eliminating the harm posed by weapons in the possession of convicted felons." *Alford I*, 2010 WL 3516787, at *12. A ten-year consecutive term is also in line with other sentences in the State of New Jersey for similar charges. *See, e.g., State v. Mitchell*, No. A-3605-07, 2010 WL 4025941 (N.J. Super. Ct. App. Div. Aug. 20, 2010) (ten-year consecutive term for violation of N.J. STAT. ANN. § 2C:39-7(b)(1)); *State v. Housey*, No. A-6535-06, 2010 WL 9488859 (N.J. Super. Ct. App. Div. Mar. 31, 2010) (ten-year consecutive term for violation of N.J. STAT. ANN. § 2C:39-7(b)).

The Appellate Division's decision is not unreasonable in light of the facts on the record below. Petitioner also has not met his burden of proof in showing that the Appellate Division acted contrary to or unreasonably applied clearly established federal law.

## F. Ineffective Assistance of Counsel

The remainder of Petitioner's claims are allegations of ineffective assistance of trial counsel. Petitioner must "show that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). He must then show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Furthermore, "[w]hen a federal habeas petition under § 2254 is based upon an ineffective assistance of counsel claim, '[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable,' which 'is different from asking whether defense counsel's performance fell below *Strickland*'s standard.'" *Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). "Federal habeas review of ineffective assistance of

counsel claims is thus 'doubly deferential.'" *Id.* (quoting
*Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)).

*1. Whether trial counsel was ineffective for failing to*
*present a defense of third-party guilt (Ground VII).*

Petitioner argues the trial counsel was ineffective for
failing to pursue a strategy of third-party guilt at trial. He
asserts there were two other potential perpetrators, Romulus and
Ghost or Ghostface, who were not investigated by counsel or
presented at trial.

The PCR court denied relief on this ground because
Petitioner had not "provided [any] affidavits or certifications
from any potential witness pertaining to what testimony they
could or would have provided, or in what way the testimony would
show that a third party, and not the defendant, murdered Mr.
Martinez." [12T33:9-13]. The PCR court further noted that trial
counsel had in fact cross-examined Investigator Greer about
Ghost/Ghostface. [12T33:18-25]. [*See* 8T122:20 to 125:21]. On
appeal, the Appellate Division affirmed the findings. *Alford II*,
2014 WL 2533794, at *4 ("PCR counsel provided no competent
evidence to substantiate the information received about
'Ghostface' or 'Romulus,' let alone to support a claim that
either one actually committed the crime."). Both courts
concluded that trial counsel had in fact presented a third-party
defense to the jury.

The Court cannot say that the state courts' applications of *Strickland* were unreasonable based on the record before the Court. The state courts determined that Petitioner needed to present affidavits or certifications from witnesses setting forth their knowledge of Romulus' or Ghostface's guilt to the PCR court in order to establish the prejudice prong of *Strickland*. "'Under usual circumstances, we would expect that . . . information [obtainable through an adequate investigation] would be presented to the habeas court through the testimony of the potential witnesses.'" *Duncan v. Morton*, 256 F.3d 189, 202 (3d Cir. 2001) (quoting *United States v. Gray*, 878 F.2d 702, 712 (3d Cir. 1989) (omissions and alterations in original)). "In light of [Petitioner's] failure to present any sworn testimony by [the witnesses], he has failed to establish prejudice." *Id.* The state courts therefore reasonably applied *Strickland* to this claim, and the Court denies habeas relief.

   *2. Whether trial counsel was ineffective for failing to effectively cross-examine state witnesses Thia Kim and Jacob Eller (Grounds VIII & XI).*[6]

---

[6] Ground XI was summarily dismissed by the Court in its order to answer to the extent it argued the PCR court erred by failing to conduct an evidentiary hearing. [Docket Entry 2]. *See Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998)("[T]he federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's *collateral* proceeding does not enter into the habeas proceeding.")(emphasis in original), *cert. denied*, 526 U.S. 1065 (1999); *see also Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2004)("alleged errors in [state] collateral

Petitioner further asserts his trial counsel was ineffective because he did not sufficiently cross-examine Kim and Eller. He alleges "that during the trial, Thia Kim lied about a plea deal with the State and that [trial counsel] was previously aware of the plea deal and failed to confront the witness with this information." [Petition at 14].

"Petitioner also asserts that prior to trial Jacob Eller advised law enforcement investigators that he lied in order to get out of jail and that trial counsel failed to confront him with this statement and that the State permitted Mr. Eller to testify to statements that were contrary to those previously provided to the State." [*Id.*] He further claims Jacob Eller expected favorable treatment from the state in exchange for testifying but trial counsel failed to effectively cross-examine him on this point. [*Id.* at 18].

### a. Thia Kim

Petitioner argues that trial counsel was ineffective under the Sixth Amendment because counsel "knew that Kim had in fact reached an agreement with the State, and failed to confront Kim

---

proceedings ... are not a proper basis for habeas relief"), *cert. denied*, 544 U.S. 1063 (2005). The Court's consideration of Ground XI is limited to trial counsel's performance in cross-examining Jacob Eller.

with this information." *Alford II*, 2014 WL 2533794, at *6.[7]

Petitioner asserts that the State, Kim, and trial counsel all concealed Kim's plea agreement with the State during trial. The only "evidence" supporting this allegation is the fact that Kim pled guilty to receiving stolen automobiles four days after Petitioner's trial concluded. *See id.*, at *4 ("PCR counsel asked the court to consider documents showing that Kim entered into a plea agreement on Monday, March 12, 2007, four days after the trial concluded on March 8, 2007. Kim testified on February 27.").[8] [*See also* Docket Entry 10-17 at 36]. At trial, Kim admitted he was facing charges for possessing a weapon. [6T98:21]. He denied that the state made any threats or promises about the charges in connection with his testimony. [6T98:25 to 99:7, 180:20-25]. He admitted under cross-examination that he

---

[7] Respondent argues Petitioner procedurally defaulted on this claim because he did not raise it on appeal. [Answer at 81 n.6]. The Appellate Division specifically addressed Petitioner's arguments "presented to the PCR court that trial counsel was ineffective because he did not pursue a third party's guilt, and did not effectively cross-examine Eller and Kim" and "affirm[ed] substantially for the reasons set forth in Judge Natal's cogent and comprehensive oral opinion." *Alford II*, 2014 WL 2533794, at *5. Regardless, because the merits are "easily resolvable" in this habeas case, "[j]udicial economy" can be served via bypassing the procedural-default question and proceeding to decide the issue on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997); *Johnson v. Lee*, 136 S. Ct. 1802, 1806 (2016); *Trest v. Cain*, 522 U.S. 87, 89 (1997).

[8] The documents that are in the record before the Court are the Kim's judgment of conviction the sentencing court's statement of reasons, dated June 9, 2006. [Docket Entry 10-17 at 36].

was on probation under Megan's Law and was charged with violating probation. [6T136:5-9, 150:25 to 151:6]. Investigator Greer also denied making any promises or threats to Kim in relation to his pending charges, [8T71:10-20], except that he "admitted that he told Kim, in response to [Kim's] initial reluctance to identify defendant, that he would be compelled by subpoena to testify before a grand jury, and would be arrested if he did not appear." *Alford II*, 2014 WL 2533794, at *3.

In its instructions, the trial court told the jury:

> In weighing the testimony of witnesses there may have — there has been evidence produced that here are charges pending against some of them at the present time. The witnesses have denied that any promises were made to them with regard to any favorable treatment of these pending charges.

> John Greer, the lead investigator from the Camden County Prosecutor's Office also testified that there were no promises of help to the witnesses or threats made to them to induce their testimony.

> In weighing the testimony, you may consider whether there was any special interest in the outcome of the case and whether the testimony may have been influenced by the hope or expectation of any favorable treatment or reward or by feelings of revenge or reprisal.

[8T124:2-17]. The trial court also instructed the jurors that "[y]ou and you alone are the sole and exclusive judges of the evidence, of the credibility of the witnesses and the weight to be attached to the testimony of each witness." [8T106:15-18].

The Court finds that Petitioner has not shown that trial counsel was ineffective for failing to cross-examine Kim about a

plea agreement with the State. There is nothing beyond the coincidental timing of the plea to suggest that an agreement was in place prior to Petitioner's trial. More importantly, PCR counsel presented no evidence to suggest that trial counsel was actually aware of the alleged plea agreement prior to Petitioner's trial. Because there is no support for Petitioner's argument that trial counsel erred, the state courts' decisions were not an unreasonable application of *Strickland*. *See United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002)("[F]ailure to satisfy either prong defeats an ineffective assistance claim[.]").

### *b. Jacob Eller*

Petitioner asserts that trial counsel was ineffective for failing to cross-examine Eller about his statement that he "lied in order to get out of jail" and his expected favorable treatment from the state.

Petitioner asserts that Eller gave a statement to police that he "lied to get out of jail." The PCR court determined that this statement was actually made by Eller as a threat to lie on the stand at Petitioner's trial out of fear that Petitioner would go after his family while he was jail and unable to protect them. [12T36:22 to 37:1]. [*See also* Docket Entry 10-17 at 14-34]. The PCR court further determined that the choice not to examine Eller on these statements was a reasonable strategic

decision on trial counsel's part to avoid having Eller testify about his fear of retaliation by Petitioner. [12T37:10-16]. It finally concluded that Petitioner had not shown prejudice under *Strickland*. [12T37:22-25].

A review of the record supports the factual finding by the PCR court that the context of Eller's statement to police on February 21, 2007 was that he was afraid of retaliation by Petitioner if he testified at trial. 28 U.S.C. § 2254(e)(1). Petitioner cites Eller's statement that he "lied to get of out jail" as the key phrase that trial counsel failed to impeach Eller with at trial. The larger context of that statement is as follows:

> [Greer]: So if you get put on the stand tomorrow, you already know you're gonna, you're gonna be brought over to court tomorrow and you're gonna be put on the stand.
>
> [Eller]: Don't matter. If I don't say nothing, nothing, nothing can happen to my family, can it?
>
> [Greer]: But . . .
>
> [Eller]: No.
>
> [Greer]: The statements you voluntarily gave me . . .
>
> [Eller]: I lied to get out of jail.
>
> [Greer]: So you're gonna sit on the stand and lie. . .
>
> [Eller]: Yes, I am.
>
> [Greer]: Just because you have to go to jail for the night?

> [Eller]: Yes, I am. Yep.
>
> [Greer]: Why, why wouldn't, why wouldn't you do the right thing, cause (inaudible) murder?
>
> [Eller]: I am doing the right thing. I'm worrying about my family.
>
> . . . I can't protect my family in jail, that's all. You don't care about, you don't care about my family, you're sending me to jail, so I can't protect my family behind bars.
>
> . . . .
>
> I told you, I told you I could walk in there in that courtroom and take care of it, but no, I'm gonna go to county jail and I'm gonna testify and I'm gonna be in jail with the fucking guys. No, I'm not doing it.

[Docket Entry 10-17 at 16-17]. Put into context, a reasonable reading of Eller's statement is that Eller was afraid of being placed into the Camden County Jail pending his testimony and believed lying on the stand would keep Petitioner and his co-defendant from retaliating against his family.

Trial counsel did not act unreasonably by not emphasizing Eller's statements to the jury. "[T]here is a 'strong' presumption that counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Branch v. Sweeney*, 758 F.3d 226, 234 (3d Cir. 2014) (quoting *Burt v. Titlow*, 571 U.S. 12, 22 (2013)). Trial counsel was vigorously pursuing a line of cross-examination regarding Eller's statement to police until the

State brought to his attention in a sidebar "if he delves too much into this, he's going to get a surprise and [Eller's] going to say something of being scared of the defendants, and that's what I'm worried about. It's – I don't want him to say something like that." [5T266:1-6]. Trial counsel then elected to move on, indicating it was a strategic choice to keep Eller from bringing up his many statements to police that he feared for his family's safety if he testified.

Even if trial counsel did err, the state courts reasonably applied *Strickland* in concluding that Petitioner had not shown there was a reasonable likelihood that the outcome would have been different. Had trial counsel questioned Eller about his statement that he "lied to get out of jail," the State would have been permitted to place it into the context of Eller's fear for his family, causing far more harm than good to Petitioner's case.

Petitioner also alleges trial counsel failed to adequately cross-examine Eller about expected favorable treatment from the State in exchange for his testimony. Eller, who was incarcerated when he first spoke with police in November 2005, testified at trial that he was "motivated to cooperate by both a desire to achieve justice for the victim, who was a friend as well as one of his drug suppliers, and in hope of securing his release." *Alford II*, 2014 WL 2533794, at *2. He denied receiving favorable

treatment from the state, however. [5T193:23 to 194:3].

Investigator Greer admitted that Eller was "looking for help
with his charges" but testified that he made no threats or
promises to Eller. [5T74:21 to 75:5]. "Defense counsel
vigorously cross-examined Eller, highlighting his significant
record of prior convictions; his heavy long-term use of crack
cocaine; and his hope of favorable treatment in 2005 in return
for his cooperation. Trial counsel also elicited that after he
was arrested on warrants, Eller might have told police that he
would not testify." *Alford II*, 2014 WL 2533794, at *3.

The state courts reasonably applied *Strickland* in
concluding that Petitioner had failed to show that trial counsel
had not erred by failing to cross-examine Eller on his hope of
favorable treatment. The record reflects that the jury was aware
that Eller did hope the State would assist him with his charges
even if no formal offer of assistance was made. Trial counsel
attacked Eller's credibility and only stopped using the February
21, 2007 statement after he was made aware that it was likely to
elicit highly damaging testimony from Eller. As previously
noted, this was a reasonable tactic. The state courts'
applications of *Strickland* were reasonable.

*3. Whether Petitioner was denied his constitutional right
to effective assistance of counsel due to the cumulative errors
of counsel. (Ground IX).*

Petitioner also asserts the cumulative errors of trial counsel entitle him to relief under § 2254. The Appellate Division dismissed this claim as lacking sufficient merit to warrant discussion. *Alford II*, 2014 WL 2533794, at *6. Looking through to the PCR court's decision, *Wilson v. Sellers*, 138 S. Ct. 1188 (2018), the Court denies habeas relief on this ground as the PCR court reasonably applied *Strickland* in concluding that Petitioner had not shown that "defense counsel committed any unprofessional errors and therefore cannot support the assertion in his petition that there were cumulative errors of profession – of counsel, amounting to ineffective assistance of counsel." [12T40: 25 to 41:4]. As there were no errors, there cannot be error causing actual prejudice. *See Albrecht v. Horn*, 485 F.3d 103, 139 (3d Cir. 2007) (holding relevant test to be whether error "had substantial and injurious effect or influence in determining the jury's verdict").

For the foregoing reasons, Petitioner is not entitled to relief under § 2254 on his ineffective assistance of counsel claims.

## G. Due Process

In Ground X, Petitioner asserted that he was entitled to an evidentiary hearing because he "made a prima facie showing that his Fourteenth Amendment Due Process right to be protected against a deception that there was no pending plea bargain

39

between the state and Thia Kim, and his Fourteenth Amendment Due Process right to Effective assistance of counsel were violated." [Petition at 16]. In its order to answer, the Court summarily dismissed Ground X to the extent it challenged the denial of the evidentiary hearing. [Docket Entry 2 at ¶¶ 7-8]. Petitioner's ineffective assistance of counsel argument has been addressed *supra*, Part IV.F.2.a.

Petitioner alleges the State and trial counsel withheld evidence of Thia Kim's plea agreement during trial. Under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, the state has an affirmative duty to disclose evidence favorable to the defense. "[T]he suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. Petitioner must prove three elements to show a *Brady* violation: "First, the evidence must be favorable to the accused, either because it is exculpatory, or because it is impeaching. Second, it must have been suppressed by the State, either willfully or inadvertently. Third, the evidence must have been material such that prejudice resulted from its suppression." *Dennis v. Sec'y, Pa. Dep't of Corr.*, 834 F.3d 263, 284–85 (3d Cir. 2016) (internal citations and quotation marks omitted). Evidence that a state witness was receiving a benefit

in exchange for his testimony is impeachment evidence that would have had to have been disclosed under *Brady*. *United States v. Bagley*, 473 U.S. 667, 676-77 (1985) (citing *Giglio v. United States*, 405 U.S. 150, 154 (1972)).

The Appellate Division concluded Petitioner failed to prove the existence of a plea agreement or other favorable arrangement between the State and Kim prior to March 12, 2007 when Kim pled guilty. *Alford II*, 2014 WL 2533794, at *6.[9] The Court concludes this is not contrary to or an unreasonable application of *Brady*. Petitioner has only speculation based on the, admittedly close, timing of Kim's plea to suggest that there was an agreement in place during Petitioner's trial. Mere suspicion is insufficient to make out a claim for federal habeas relief. As Petitioner has not met his burden on showing favorable evidence was withheld, the state courts did not violate or unreasonably apply federal law in denying this claim.

## H. Judicial and Prosecutorial Misconduct

Petitioner's final claims in Ground XII are vague assertions of prosecutorial and judicial misconduct. The state courts summarily denied this claim because Petitioner failed to provide any factual or legal basis for his claim. The Court

---

[9] The appellate court also noted that Petitioner had not presented his Due Process argument to the PCR court but ruled on the merits anyway. *Alford II*, 2014 WL 2533794, at *6.

agrees. "'Bald assertions and conclusory allegations' do not provide a court with sufficient information to permit a proper assessment of habeas claims, and a habeas court cannot speculate about claims." *Simms v. Carroll*, 432 F. Supp. 2d 443, 444 (D. Del. 2006) (quoting 28 U.S.C. § 2254 Rule 2).

In his habeas petition, Petitioner add that "the PCR court ruling denying Post-Conviction Relief violated his federal constitutional rights under the Sixth Amendment." [Petition at 19]. As has been previously noted, "the federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's *collateral* proceeding does not enter into the habeas proceeding." *Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998)(emphasis in original), *cert. denied*, 526 U.S. 1065 (1999).

The Court has reviewed all of Petitioner's claims of ineffective assistance of counsel and determined that the state courts did not unreasonably apply *Strickland* in adjudicating his claims. Petitioner's habeas petition is therefore denied with prejudice.

## I. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that

petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

For the reasons expressed above, Petitioner has failed to make a substantial showing that he was denied a constitutional right. As jurists of reason could not disagree with this Court's resolution of the claims, the Court shall deny Petitioner a certificate of appealability.

## V.  CONCLUSION

For the reasons stated above, the habeas petition is denied. A certificate of appealability shall not issue.

An accompanying Order will be entered.


**March 29, 2019**                          **s/ Jerome B. Simandle**
Date                                        JEROME B. SIMANDLE
                                            U.S. District Judge